Roberto SANCHEZ and Elva
Rodriguez, Petitioners,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 85–4145.

United States Court of Appeals,
Second Circuit.

Argued Dec. 19, 1985.

Decided March 11, 1986.

Daniel E. Clifton, Clifton & Schwartz,
New York City, for petitioners Roberto
Sanchez and Elva Rodriguez.

William R. Stewart, Deputy Asst. Gen.
Counsel, N.L.R.B., Washington, D.C. (Rose-
mary M. Collyer, Gen. Counsel, John E.

Higgins, Jr., Deputy Gen. Counsel, Robert
E. Allen, Associate Gen. Counsel, Elliott
Moore, Deputy Associate Gen. Counsel,
Barbara A. Atkin, of counsel), for respon-
dent N.L.R.B.

Before OAKES, KEARSE and PIERCE,
Circuit Judges.

PIERCE, Circuit Judge:

Petitioners Roberto Sanchez and Elva
Rodriguez seek review pursuant to Section
10(f) of the National Labor Relations Act
(Act), as amended, 29 U.S.C. §§ 151, 160(f)
(1982), of an order of the National Labor
Relations Board (Board) dated April 30,
1984, that dismissed in part an unfair labor
practice complaint against Goodie Brand
Packing Corp. (Goodie Brand or Company).
While the Board agreed with the Adminis-
trative Law Judge (ALJ) that Goodie Brand
had violated Section 8(a)(1) of the Act, 29
U.S.C. § 158(a)(1), by displaying union ani-
mus, the Board modified that portion of the
ALJ's recommended order which found
that Goodie Brand had violated Section
8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), by
discharging petitioner Sanchez and other
employees who had participated in a strike.

The petition for review is granted and
the Board's order is modified to provide for
the reinstatement of petitioner Sanchez.
The case is remanded for further proceed-
ings with respect to the striking employees.

## BACKGROUND

The findings of fact as made by the ALJ
and adopted by the Board chronicle a pat-
tern of unfair labor practices at Goodie
Brand. Goodie Brand is a wholesale fruit
and vegetable distributor in New York City
that purchases produce at the Hunts Point
Market (Market) in the Bronx as well as
from growers throughout the United
States and Mexico and sells the produce to
retail stores and restaurants. Goodie

Brand is run by four brothers; Abe Solomon, the President, is in charge of labor relations.

The Company employs floor workers who sort and package the produce, and drivers who pick up the produce at the Market and make deliveries. These employees are represented by Local 202, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union or Local 202), which has two association-wide collective bargaining agreements with Goodie Brand. These agreements, one of which covers the drivers while the other covers the floor workers, have been in existence since 1959 and, according to the findings, contain valid union security clauses, no-strike and no-lockout clauses, and provide for the adjustment of grievances and arbitration. In addition, both agreements provide that the Union may designate shop stewards.

Goodie Brand has a telling history of hostility to Union activities. Felix Liciaga, a floor worker, was the shop steward for both the drivers and the floor workers for several years until 1978 or 1979. In February, 1980 Petitioner Elva Rodriguez, a floor worker, was elected shop steward and also represented both the floor workers and the drivers. Despite the fact that both collective bargaining agreements contained union security clauses which required union membership after 30 days of employment, only eleven out of sixty of the Company's eligible workers were Union members in 1980. Rodriguez' efforts to increase union membership and to represent Goodie Brand's employees met with considerable Company resistance. After distributing union membership cards to the employees, Rodriguez was told by one of the Solomon brothers not to talk about the Union inside the plant. In April, 1980, Rodriguez, who lives in Yonkers, was discharged from the Company for failing to report to work during the transit strike. Sol Solomon told the employees that Rodriguez would not be allowed back at work because she was a "son of a bitch." Rodriguez was the only employee discharged, despite the fact that other employees did not report to work during the transit strike. Rodriguez was reinstated only after the employees walked out and Teddy Mogilnicki, the Union business agent, interceded on her behalf. In August and September 1980, the Union received letters from the Company complaining about Rodriguez' work performance. Thereafter, Rodriguez and her sister were told that they would be required to lift thirty-two pound boxes of tomatoes which, until then, had been lifted for them by a male worker. When she protested to Abe Solomon and presented him with a doctor's note, he told her that the alternative was to quit; when she complained to Mogilnicki, he said that she must follow orders. In June 1981, Rodriguez resigned as shop steward and Roberto Sanchez, a driver, was elected on July 1.

Sanchez was hired as a driver by Goodie Brand in 1975 and became a member of the Union in 1978. Sanchez testified that when one of the Solomon brothers asked him why he joined the Union and he responded that he sought Union benefits, he was told that he should have talked it over with the management first. After attending a Union meeting, Sanchez was told by the management that he had better be careful and that he was being followed; he was also told not to talk to other employees about Union activities. Thereafter, the Union received letters complaining about Sanchez' work performance. As the ALJ pointed out, there is no record of prior complaints about Sanchez.

According to the findings, after Sanchez' election as shop steward in July, 1980, he was subjected to threats and warnings by Goodie Brand's management and assigned more onerous working conditions. For example, Abe Solomon told Sanchez that he could not represent both the floor workers and the drivers (despite the fact that one shop steward had traditionally represented both units) because the Company had two separate contracts with the Union. Solomon asked Sanchez why he was organizing the workers and threatened Sanchez saying "from now on, you me [sic] going to have a fight every single day, and let's see how

long you last in your job." App. at 103. Sanchez was also told to advance his own money for tolls contrary to prior Company practice, and he was put on the night shift contrary to seniority rules. In addition, after Sanchez' election as shop steward, a number of complaint letters were sent to the Union regarding his work performance. Despite this harassment, Sanchez filed over forty-five grievances with the Union.

The following events gave rise to petitioners' present predicament. At approximately 5:30 a.m. on September 25, 1981, Sanchez left the Market driving a Company truck. He unwittingly turned south onto a northbound lane of the Bruckner Boulevard. When he realized his mistake, he crossed the concrete divider that separates the north and south lanes. The divider was approximately twelve inches wide and five and one half inches high and the truck was damaged to the extent of $2,300. Nat Solomon observed the incident and when Sanchez returned to the Goodie Brand plant, Abe Solomon asked him what had happened; according to Sanchez, upon hearing Sanchez' story Solomon walked away. Abe Solomon testified that "[Sanchez] told me what happened and I said to him that at this particular time you're being suspended for a period of time." Solomon told the ALJ that he meant an "indefinite suspension." App. at 661. Thereafter, Sanchez received a letter from Goodie Brand addressed to the Union informing him that he had been indefinitely suspended. Solomon testified that after discussions with Goodie Brand's attorneys and Mogilnicki he decided to convert the indefinite suspension to a two week suspension. *See also* app. at 1098 (pre-hearing letter to Board claiming that Sanchez was suspended). Mogilnicki testified that he understood that the suspension would be for one week, but at most Solomon had agreed to a two week period. Apparently, no one told Sanchez about the conversion to a two week suspension. In fact, after Sanchez received the letter from Goodie Brand and asked the Union's attorney what it meant, he was told "[w]hat the hell you think it is? You're fired." App. at 331 (testimony of Roberto Sanchez).

On October 5, 1981, Sanchez, with the help of other union members, set up a picket line outside the Goodie Brand plant to protest his discharge. Approximately forty employees joined the picket line. On October 6, the Company sent the following letter to all these employees with the exception of Sanchez:

> Please be advised that your are [sic] engaged in an unlawful work stoppage—A WILDCAT STRIKE—which is a ground for DISCHARGE.

> Unless you terminate your strike and return to work at 8 AM on Friday, October 9, 1981, you may consider yourself discharged at 8:01 AM on Friday, October 9, 1981.

App. at 1121. Several employees returned to work; of those that did not return on October 9, eight were reinstated by October 19. At the March 2, 1982 hearing before the ALJ, the Company offered unconditional reinstatement to thirteen of the remaining fifteen employees, excluding only Elva Rodriguez and her sister. Sanchez was never sent the above-quoted discharge letter and was never offered reinstatement. *See* app. at 15 n. 24.

*The Decisions of the ALJ and the Board*

Petitioners filed several complaints between July and October, 1981 alleging violations by Goodie Brand of Sections 8(a)(1), (3) and (4) of the Act. These complaints were consolidated and a hearing was held before ALJ Herman who issued a decision and recommended order dated January 28, 1983. The ALJ first credited Sanchez' testimony because he "testif[ied] in a straight forward and logical manner. [Abe] Solomon, on the other hand, was evasive in his responses." The ALJ held that the Company had no right to refuse to recognize Sanchez as the shop steward; the refusal to advance Sanchez toll money and the warnings about discussing union activities as well as the complaint letters regarding Sanchez' work performance were found to be "methods of intimidation." The imposition of more stringent work conditions was, according to the ALJ, "[t]he ultimate act of

retribution" and the purpose of Sanchez' placement on the night shift was "to scrutinize his union activities."

The ALJ concluded that "[b]y threatening, warning, and interrogating Sanchez, and by assigning him more onerous working conditions, all because of his protected concerted activities, [Goodie Brand] thereby restrained and coerced employees in the exercise of their Section 7 rights and violated Section 8(a)(1) of the Act." The ALJ also found that the indefinite suspension meted out to Sanchez on September 25, 1981 was tantamount to a discharge and that the "precipitous action ... was the direct result of Sanchez' union activities and therefore constituted an unfair labor practice in violation of Section 8(a)(3) of the Act."

Applying *Arlan's Department Store of Michigan, Inc.*, 133 NLRB 802 (1961), which held that a strike by employees in the face of serious unfair labor practices is immune from a no-strike clause in a collective bargaining agreement, the ALJ held that the employees engaged in the strike were also unlawfully discharged. The ALJ found that Local 202 had so seriously failed to represent the Goodie Brand employees, that when Sanchez was presumably fired the employees were left with virtually no representation. Thus, in dismissing Sanchez, the Company was in effect trying to deprive its employees of proper representation which, the ALJ concluded, was a serious unfair labor practice that nullified the no-strike clause in the contract. As the strike was caused by Sanchez' discharge, itself a violation of the Act, the ALJ reasoned that the striking employees were engaged in protected concerted activity and therefore the discharges meted out pursuant to the Company's October 6 letter were in violation of Sections 8(a)(1) and (3) of the Act.

The ALJ recommended that Goodie Brand be ordered to reinstate Sanchez as well as the striking employees to their former or substantially equivalent positions with backpay. In addition, the Company was ordered to cease and desist from future unfair labor practices.

The Board modified that portion of the ALJ's order that found a Section 8(a)(3) violation by Goodie Brand and that required the reinstatement of Sanchez and the striking employees. While the Board agreed with the ALJ's credibility determinations and with the finding that Sanchez was discharged rather than suspended, the Board noted that the ALJ had failed to apply the *Wright Line* test to determine the motivation of the employer in dismissing Sanchez. *See Wright Line, a Division of Wright Line, Inc.*, 251 NLRB 1083 (1980), *enf'd*, 662 F.2d 899 (1st Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). Applying this test, the Board held that Goodie Brands' violations of Section 8(a)(1) were clearly sufficient to support a prima facie showing that union activity was a motivating factor in the Company's decision to discharge Sanchez. The Board found, however, that the Respondent had established that it would have discharged Sanchez in the absence of his Union activities because of the driving incident. Concluding that "Sanchez' conduct in driving a company truck down the wrong side of a major highway for some distance, crossing the median, and damaging the truck is such gross negligence that it would have provoked discharge of any employee irrespective of any animus the Respondent may have harbored against that employee," the Board dismissed that portion of the complaint that alleged unlawful discharge of Sanchez. As the Board found the discharge of Sanchez lawful, it held that the employees' strike in protest of the dismissal was unprotected activity in violation of the no-strike clause of the collective bargaining agreement and dismissed that portion of the complaint that alleged a violation of Section 8(a)(3) with respect to the discharge of the striking employees.

Petitioners appeal the Board's modification of the ALJ's recommended order, claiming that the Board's conclusions are not supported by substantial evidence. Petitioners contend that Sanchez was not

fired for the driving incident—he was merely suspended; therefore the Board's conclusion that the Company discharged Sanchez for driving the wrong way and crossing the median on September 25 is not sustained by the record. Even if Sanchez was discharged, petitioners claim that the ALJ's finding that he was dismissed as a result of union animus, not the driving mishap, cannot be disregarded. Furthermore, the petitioners contend that the ALJ's analysis satisfies the rationale of *Wright Line* and thus his failure to cite to that decision should not prove fatal. Finally, even if this court upholds the Board on the issue of Sanchez' dismissal, petitioners urge us to remand the case of the striking employees for a determination of whether they nevertheless had the right to strike given their lack of effective representation.

## DISCUSSION

Under Section 7 of the Act, 29 U.S.C. § 157, employees of an employer covered by the Act have a right to form, join, or assist labor organizations. Section 8(a)(1) makes it an unfair labor practice to interfere with, restrain, or coerce the exercise of those rights; Section 8(a)(3) prohibits discrimination in hire or tenure to encourage or discourage membership in a Union. The Board and the courts have set forth certain guiding principles to determine whether a discharge violates the Act. In addition, the Board's decision must be affirmed if it is supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Local One, Amalgamated Lithographers v. NLRB*, 729 F.2d 172, 175 (2d Cir.1984).

In *NLRB v. Transportation Management Corp.*, the Supreme Court observed that under the Act:

it is undisputed that if the employer fires an employee for having engaged in union activities and has no other basis for the discharge, or if the reasons that he proffers are pretextual, the employer commits an unfair labor practice. He does not violate the [Act], however, if any antiunion animus that he might have entertained did not contribute at all to an otherwise lawful discharge for good cause.

462 U.S. 393, 398, 103 S.Ct. 2469, 2472, 76 L.Ed.2d 667 (1983). When there is evidence that an employer has dual or mixed motives for the discharge, the Board has applied the *Wright Line* test approved by the Supreme Court in *Transportation Management. See Local One*, 729 F.2d at 175. Once the charging party has established a prima facie case that the employee's dismissal was the result of conduct protected by Section 7 of the Act, the burden then shifts to the employer to show, by a preponderance of the evidence, that the discharge would have occurred "in any event and for valid reasons." *Transportation Management*, 462 U.S. at 400, 103 S.Ct. at 2473. If protected union conduct was a substantial or motivating factor in the dismissal and the employer does not establish that it would have discharged the employee anyway for other reasons, the employer has failed to meet his burden. *Id.* at 401, 103 S.Ct. at 2474.

The Board held that the violations of Section 8(a)(1) as found by the ALJ were sufficient to support the inference that protected activity motivated Goodie Brand's decision to fire Sanchez. However, the Board concluded that the driving incident provided an independent and valid reason for the discharge. We are unable to agree with the Board's or the ALJ's initial premise that Sanchez was discharged for the driving incident.

We must affirm the Board's decision if it is supported by substantial evidence. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *see Allbritton Communications Co. v. NLRB*, 766 F.2d 812, 822 (3d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 850, 88 L.Ed.2d 891 (1986); *Local One*, 729 F.2d

at 175. This court may not review the matters before the Board de novo; we are required to accept the Board's conclusions if supported by substantial evidence even if another contrary view is tenable. *Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 464; *see Local One*, 729 F.2d at 175–76. On the other hand, "a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." *Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 465; *see Bon-R Reproductions, Inc. v. NLRB*, 309 F.2d 898, 903 (2d Cir.1962).

Reviewing the record of the testimony and the exhibits presented at trial, we cannot "conscientiously" uphold the finding that Sanchez was discharged for the driving incident. In fact, all the evidence suggests that Sanchez was merely suspended for one or at most two weeks. The testimony of Abe Solomon as well as that of Mogilnicki refutes the notion that Sanchez was fired for the driving mishap. Both men testified that Solomon had agreed to suspend Sanchez. Furthermore, the letter sent by Goodie Brand's attorney to the Board protests that the "Employer, with our advice, intended to convert the indefinite suspension to a one week suspension." App. at 1090. The fact that Sanchez thought he was discharged for the driving incident does not shed much light on the Company's motivation for purposes of applying the *Wright Line* test. Rather it is the unrefuted testimony of the employer, supported by the corroborative testimony of Mogilnicki and the Respondent's own exhibits that provide the factual basis for our conclusion that Sanchez was suspended, not discharged, for the driving incident.

The Board argues on appeal that even if Sanchez was not discharged for the driving incident, the fact that he led a wildcat strike is a legitimate basis for the discharge. While it may well be true that Sanchez could have been discharged for leading the strike, we have found scant evidence in the record to support the conclusion that such was the case. *See* App. at 1090. Moreover, the Board itself did not rely on this explanation in its decision nor did it apply the *Wright Line* analysis to this new-found possibility for the "discharge." It is undisputed that "the courts may not accept appellate counsel's *post-hoc* rationalizations for agency action.... [A]n agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983) (citations omitted).

Having concluded that the Board's determination that Sanchez was legitimately discharged for the driving incident is not supported by substantial evidence, we cannot accept the Board's dismissal of that part of the claim which contends that Sanchez was fired as a result of his union activities in violation of Section 8(a)(3). The Board found that Sanchez had met his burden of proving under *Wright Line* that the discharge was the result of union animus. There is ample evidence to support his finding. The record, however, does not support the Board's conclusion that Goodie Brand met its burden of rebuttal by showing that it legitimately discharged Sanchez for the driving incident. As Justice White has noted:

> [t]he employer is a wrongdoer; he has acted out of a motive that is declared illegitimate by the statute. It is fair that he bear the risk that the influence of legal and illegal motives cannot be separated, because he knowingly created the risk and because the risk was created not by innocent activity but by his own wrongdoing.

*Transportation Management Corp.*, 462 U.S. at 403, 103 S.Ct. at 2475. Thus we grant the petition for review with respect to Sanchez' claim that the Company violated Section 8(a)(3) when it fired him.

We are left with the situation of the employees who went on strike because they believed Sanchez had been wrongfully dis-

charged as a result of the driving incident. We have held that there is insufficient evidence to support this version of Sanchez' discharge, however, it does appear that there is ample evidence to support both Sanchez' and the employees' good faith belief that he had been fired. The Board predicated its dismissal of the employees' ·8(a)(3) complaint on its conclusions with respect to Sanchez' discharge. Since we have rejected these conclusions, we remand the case for further proceedings to consider the claim of the striking employees that they were dismissed in violation of Section 8(a)(3) in light of our decision with respect to Sanchez' claim.

The order of the Board is modified and those portions of the ALJ's recommended order that require the rehiring of Sanchez are reinstated. The case is remanded to the Board for a determination as to the Section 8(a)(3) claims of the other employees.